

**ANDREW M. LEBLANC**
*Partner*
1850 K Street, NW, Suite 1100  |  Washington, DC 20006
T: 202-835-7574
aleblanc@milbank.com  |  milbank.com

April 7, 2025

The Honorable Jessica G. L. Clarke
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Dear Honorable Judge Clarke:

The Parties submit this joint letter in accordance with the Court's Rule 4(k).

Plaintiffs ask this Court to compel Defendants to produce electronically stored information in the form of instant messages consistent with (i) their numerous agreements to do so and (ii) prevailing law. Defendants' eleventh-hour reversal of position, which we recount below, is deeply prejudicial to Plaintiffs, particularly given the tight timeline for factual discovery and Plaintiffs' desire to complete document discovery, transition to depositions, and finally obtain redress for Defendants' wrongdoing.

Plaintiffs first served Defendants with requests for document discovery **ten months** ago. Those requests required Defendants to search for and produce responsive and non-privileged ESI, including, expressly, instant messages. Defendants took no issue with that obligation, and even agreed to do so, after the parties isolated the issue for discussion. The record on this is clear. Equally clear is that on March 27—the day immediately before the March 28 deadline for substantial completion of document discovery—Defendants stunningly reversed course, saying they *never* agreed to produce these materials and that doing so would impose costs and burdens upon them that are not proportional to the case. Plaintiffs immediately requested a meet and confer on this issue and requested that Defendants participate in this letter.

Instant messaging materials, including text messages, can be *critical* sources of information, particularly in cases like this one where Defendants' intent is at issue. Indeed, courts in this District have observed, instant messages "are an increasingly common source of relevant and often critical evidence in twenty-first century litigation." *We the Protesters, Inc. v Sinyangwe*, 348 F.R.D. 175, 177 (S.D.N.Y. Dec. 18, 2024). The notion that Plaintiffs should be barred from obtaining responsive, non-privileged messages from a party to this billion-dollar action on burden and proportionality grounds should be rejected.

This is particularly so given the developed record, which shows that until just a few days ago, Defendants have *always* committed to provide Plaintiffs with exactly this information, consistent with their legal duty. Three examples make this clear.

***First***, Plaintiffs' first set of document requests, sent on June 3, 2024, explicitly defined both "Communication" and "Documents" to include "text messages" and "instant messages." Plaintiffs' second and third set of document requests both incorporated those same definitions. Defendants formally objected to each of these three sets of requests, as early as July 22, 2024, but *none* of Defendants' objections challenged their obligation to collect and review instant messages nor did Defendants raise any objection to doing so during the many meet and confers that followed.

***Second***, the parties' *explicitly* negotiated Defendants' obligation to collect and produce instant messages when agreeing to the ESI Stipulation (ECF 40). As summarized in **Exhibit A**, the parties debated whether instant messages, including text messages, needed to be "collected, searched, reviewed, and/or produced" here. Ultimately, the parties agreed to collect and produce those materials. Out of an abundance of caution, Plaintiffs' counsel provided examples of information that would need to be produced under the plain terms of the agreement. Defendants' counsel confirmed in writing by email that they would proceed accordingly. Notably, Plaintiffs took the parties' agreement to heart—and accordingly, Plaintiffs searched for, reviewed, and produced responsive instant messages to Defendants. Defendants did not.

***Finally***, until their March 27 reversal, Defendants never took a contrary position to what they agreed upon in the ESI order. As rolling productions arrived, Plaintiffs internally noted they had not yet received instant messaging material from Defendants but reasonably relied on Defendants' agreements and representations that those materials would be produced and gave Defendants the benefit of the doubt given the magnitude of this case. Plaintiffs took further comfort that Defendants did not disavow their commitments during subsequent meet and confers regarding discovery issues. On March 14, during a meet and confer on various discovery disputes, Defendants, through counsel, affirmed their belief that instant message materials were included in their collection and review and stated they would confirm. But Defendants' counsel only returned to Plaintiffs' counsel on March 27 with their stunning new position.[1] Permitting Defendants to pull the bait-and-switch, just as fact discovery is nearing completion, would severely prejudice Plaintiffs' efforts to prosecute their case.

But even if it were (somehow) appropriate for Defendants to renege on their various promises, they have no legal basis to resist this discovery. Because parties rarely admit their wrongdoing or fraudulent intent—a key issue in this case—these more informal communications are reasonably likely to contain relevant admissions and other evidence. Further, these materials are not duplicative of other discovery taken here and are no more burdensome to produce than other ESI that has already been produced. *E.g.*, *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 2016 U.S. Dist. LEXIS 56085, *29 (S.D.N.Y. Mar. 29, 2016) (ordering production of instant messages and finding instant messages are not duplicative of emails). There is no reason that Defendants should be relieved of their burden to produce materials that may shine a light on the Defendants' intent and other key issues in this litigation, particularly on this record.

Defendants' cited cases are inapposite and do not counsel against their obligation to produce instant messages. For example, the text messages in *Ahmed* did not relate to plaintiff "or the events

---

[1] After Plaintiffs' counsel recounted by email (later on March 27) the many ways in which Defendants had previously agreed to produce such materials, as explained above, Defendants' counsel responded—at approximately 11:47 pm on March 28, the substantial completion for document discovery—that Defendants would "*consider*" complying, but only after Defendants "substantiate[d] their demand" for these materials.

at issue in" that litigation. *Ahmed v. City of New York*, No. 22-CV-8007 (JHR) (JW), 2023 WL 8355782, at *3 (S.D.N.Y. Dec. 1, 2023). Here, Plaintiffs only seek instant messages that are responsive to the requests, which are clearly relevant here—Defendants have not even collected and searched their custodians' instant messages to determine whether they are relevant. Defendants other case is also irrelevant. There, the court in *Mutabagani* denied a facially overbroad "all documents and communications" request related to the plaintiff. Defendants conveniently leave out that the Court there also granted all of Plaintiffs' other requests, which included requests for text messages. *In re Mutabagani*, No. 22 MC 299 (VB), 2023 WL 2811621, at *5 (S.D.N.Y. Apr. 6, 2023) ("Abdulhadi has failed to demonstrate the subpoenas are unduly burdensome, except with respect to the first document request served on him."); Sanfilippo Decl., at 7, *In re Mutabagani*, Case No. 7:22-mc-00299-VB (S.D.N.Y. Oct. 27, 2022), ECF 7-1 (attached as **Exhibit B**).

Plaintiffs respectfully request that the Court compel Defendants to produce instant messages consistent with their various representations and prevailing law. Defendants have now represented that "each of Defendants' custodians have confirmed that, to the best of their recollection, they did not use text messages to communicate about the topics at issue in the Complaint" and Defendants are "willing to collect instant messages, which we have already begun doing." Defendants, however, would not commit to providing these instant messages on any schedule or timeline, nor would they commit to producing any defined scope of materials. Plaintiffs believe that the Court should order these productions to be substantially made by April 14 to avoid any further delay and prejudice to the Plaintiffs, particularly given that such materials are already long overdue.

## Defendants' Position

Plaintiffs' request to compel instant messages from company collaboration platforms and text messages from mobile devices is frivolous and does not present a genuine dispute between the parties. Plaintiffs intentionally conflate those two categories of documents.

As to instant messages, there is no dispute. Defendants initially objected to collecting and producing instant messages because Defendants believed (and still believe) that the cost and expense of doing so would be disproportionate to the needs of the case, given the unlikelihood that instant messages from Defendants' custodians will contain responsive information. Nevertheless, and contrary to Plaintiffs' mischaracterization of the record, Defendants agreed, in writing, to collect instant messages from their custodians on March 27, and have already begun doing so. A copy of that email is attached hereto as Exhibit 1. Accordingly, there is no dispute. Defendants' preliminary expectation is that they will be able to collect and review this information within approximately a month, depending on the volume of potentially responsive information.

As to the collection of text messages from mobile devices, there is no basis for Defendants to undertake a collection and review because all of Defendants' custodians have confirmed that, to the best of their recollection, they did not use text messaging applications on their mobile devices to communicate about the matters at issue in the Complaint, so this is not a place where responsive information is likely to be located, and the costs and expense associated with the collection of text messages would be disproportionate to the needs of the case. This cannot be disputed because Plaintiffs have not collected text messages from their custodians for the same reason. It is simply remarkable that Plaintiffs have burdened this Court with a request to compel

the collection and production of text messages from mobile devices when they are not collecting or producing text messages themselves.

Plaintiffs' arguments in support of their position regarding the collection of text messages are simply wrong—and irrelevant, given their own failure to collect texts. Plaintiffs' claim that Defendants previously agreed to the collection of text (and instant) messages is wrong. Until recently, the parties never even discussed—much less committed to—collecting and reviewing texts (or instant) messages, so Plaintiffs cite no evidence to the contrary. Instead, Plaintiffs argue that Defendants agreed through Section 3.d.xiii of the ESI Protocol, ECF No. 40. The obvious flaw in Plaintiffs' argument is that sub-section applies equally to them, yet Plaintiffs did not collect text messages. By definition, Plaintiffs' position that the ESI Protocol required the parties to collect text messages cannot be correct given their own failure to do so. Moreover, Section 3.d.xiii addresses the parties' *preservation* obligations, not their affirmative collection commitments. *Id.* at Section 3 (entitled "Preservation"). In particular, Section 3.d.xiii states that instant messages, as well as text messages, "will be collected, searched, reviewed, and/or produced, ***as appropriate and in accordance with this ESI Protocol***." *Id.* § 3.d.xiii (emphasis added). Plaintiffs simply omit that italicized clause in their quotation. By contrast, the parties' search and collection obligations are found in Section 4.a of the ESI Protocol, which states that "in responding to a discovery request, the responding Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI and will execute any reasonable search methodologies to produce documents in this litigation[.]" *Id.* Thus, the parties agreed that each party would determine how best to search for potentially responsive documents, guided by the usual criteria of burden, responsiveness, and proportionality. And that is exactly what both parties have done, and to exactly the same extent. Plaintiffs cannot credibly argue that the parties agreed to obligations that Plaintiffs have not, and will not, follow

Plaintiffs' argument that their discovery requests required the collection and review of text (and instant) messages because Defendants did not object to their discovery requests is also meritless. Defendants' discovery responses explicitly objected to the collection of documents from sources where responsive documents were unlikely to be found, which includes text messages. Plaintiffs again cannot disagree because they likewise did not object to texts, yet did not collect them in response to Defendants' discovery requests. Furthermore, Plaintiffs have not been misled about Defendants' position. Plaintiffs inquired whether Defendants had collected text messages and instant messages during a meet and confer less than one month ago and, in response to that inquiry, Defendants stated they would review and advise—which they promptly did. Plaintiffs, for their part, only revealed that they had not collected text messages from their own custodians last week.

In addition, the collection, review and production of text messages would be disproportionate to the needs of the case when weighed against the proportionality factors outlined in Federal Rule 26(b)(1). Defendants have already produced more than 15,000 documents, comprising more than 150,000 pages, in response to Plaintiffs' discovery requests. Plaintiffs offer no suggestion for why the information in Defendants' text messages is likely to be responsive to any party's claims or defenses, nor can they because all of Defendants' custodians have advised that, to the best of their recollection, they did not use text messages to communicate about the subject matters at issue in the Complaint. Because there is no reason to believe that responsive

information would be located in Defendants' texts, Defendants should not be required to undertake the burden and expense of reviewing them. *See, e.g.*, *Ahmed v. City of New York*, No. 22-cv-8007 (JHR) (JW), 2023 WL 8355782, at *3 (S.D.N.Y. Dec. 1, 2023) (denying motion to compel text messages because they were "at most, minimally relevant and any relevance does not outweigh the burdens of production"); *accord In re Mutabagani,* No. 22 MC 299 (VB), 2023 WL 2811621, at *5 (S.D.N.Y. Apr. 6, 2023) (denying discovery request that sought text messages as unduly burdensome).

In a last-ditch effort to create a dispute where none existed, Plaintiffs seek to compel Defendants to collect, review, and produce instant messages and texts in less than a week. That is neither reasonable nor possible. Defendants are moving with deliberate speed, but Defendants only agreed to produce instant messages following a recent meet and confer. Plaintiffs' proposed deadline is completely arbitrary, especially considering that Plaintiffs just provided Defendants with additional search terms—that have not yet even been agreed to—relating to their most recent set of document requests.

If the ESI Protocol or some other document requires the collection and review of text messages, however, then Plaintiffs must do so as well for each of their custodians, including from the Bondholders directing this litigation, on the same timeline.

\*\*\*

Respectfully Submitted,

*/s/ Andrew M. Leblanc*
Andrew M. Leblanc
**MILBANK LLP**
1850 K Street NW,
Suite 1100
Washington, D.C. 20006
Telephone: (202) 835-7574
Facsimile: (202) 263-7574
*Counsel for Plaintiffs*