



ANDREW M. LEBLANC

*Partner*

1101 New York Avenue NW | Washington, DC 20005
T: 202-835-7574
aleblanc@milbank.com | milbank.com

Defendants shall respond to this
letter by **August 29, 2025**.
Defendants should also state their
position on *in camera* review of
the disputed documents.

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

Dated: August 21, 2025
New York, New York

August 20, 2025

The Honorable Jessica G. L. Clarke
Daniel Patrick Moynihan
Unites States Courthouse
500 Peart St.
New York, NY 10007-1312

Dear Honorable Judge Clarke:

Plaintiffs write in response to Defendants' letter and declaration filed at Dkt.
No. 96.[1] Defendants' letter, and the declaration it attaches, omits important context
for this Court, highlights Defendants' situationally tailored "heads-I-win, tails-you-
lose" approach to attorney-client and common interest privilege challenges, and
defies the record.

Defendants have withheld hundreds of communications, spanning nearly a
year, in which White & Case provided legal advice to both parties to a merger
transaction (DISH and EchoStar) by arguing—often inconsistently—that White &
Case represented just one entity or the other, then both separately, and then both
jointly, with respect to the merger transaction, on one hand, and the intertwined
"liability management" transactions that occurred just days after the merger closed
on the other.

There are multiple problems here. First, this is at least the ***third*** different
position Defendants have taken as to whom White & Case LLP represented in
connection with the merger and companion liability management transactions,
including a position that is different from the one Defendants' counsel represented to
Your Honor at the August 6 hearing. Second, Mr. Ergen's efforts to disassociate the
merger and companion liability management transaction—such that various
privileges neatly apply as between the two—is belied by the record (and common
sense). Multiple documents suggest Defendants undertook these companion efforts
simultaneously, often with the same White & Case lawyers advising both DISH and
EchoStar on both topics, undercutting the fundamental basis of Defendants' newest
privilege positions.[2] Third, Defendants' privilege log descriptions of documents they

---

[1] While the Court only ordered Defendants to submit evidence regarding this dispute, Plaintiffs
respectfully request permission to file this letter in response to Defendants' letter.
[2] When it was advantageous to the Defendants in their motion to dismiss briefing, they asserted the
liability management transactions occurred in connection with the merger noting, for example, that
they were "***carried out as part of a broader effort to integrate the newly-merged entities***…"
Dkt. No. 61 at 32 (emphasis added); *see also id*. at 51 (noting that "***the [liability management]***

are withholding squarely conflict with Defendants' latest conception of whom White & Case represented throughout 2023, and for what purpose. As just a few examples:

- Defendants claim White & Case **never** represented DISH with respect to merger negotiations but then withhold as attorney-client privileged White & Case's communications with DISH regarding exactly that topic.[3]

- Defendants further claim that merger and liability management transactions were separate issues (such that before October 2, 2023, White & Case represented only EchoStar with respect to merger negotiations and only DISH with respect to liability management transactions) but then, on multiple occasions, withhold *the same document* on both grounds, including documents dated well before October 2023.[4]

- At other times, Defendants explicitly assert common interest and joint representation privilege over merger negotiation and liability management communications from White & Case to solely DISH.[5]  But if White & Case were representing DISH at this time as Defendants contend, there would be no need to assert a joint representation at all.

At bottom, the record, including Defendants' opportunistically shifting explanations over the past year of litigation and its inconsistent descriptions of documents, suggests something far more obvious: White & Case represented both parties (each controlled by Charles Ergen) to a merger, including the interrelated transactions and liabilities at issue in the Complaint, in a manner inconsistent with Defendants' varying, *post hoc* explanations for why this arrangement did not vitiate privilege.

When analyzing Defendants' "evidence," the Court should consider three essential points:

---

*Transactions… were made as part of a corporate reorganization* following the Merger *to effectuate the integration of the EchoStar and DISH businesses*…") (emphasis added).

[3] *See, e.g.*, Defendants' Privilege Log, dated May 16, 2025, attached hereto in relevant part as **Exhibit A**, at P2-02509 (White & Case advising DISH regarding "Merger negotiations"); P2-02510 (same); P2-02514 (same); P2-02544 (same); P2-02719 (same).

[4] *E.g.*, *id.* at P2-02654 (June 23 email from White & Case to DISH regarding "Illustrative Capital Structure Solutions Deck" withheld for *both* merger negotiations and transactions undertaken by DISH and/or EchoStar entities in January 2024); *compare, e.g.*, *id.* at P2-02514 (July 14, 2023, email titled "Strategy/Privileged" withheld as related to merger negotiations) *with* P2-02656 (July 14, 2023, email titled "Strategy/Privileged" withheld as related to transactions undertaken by DISH and/or EchoStar entities in January 2024); *compare* P2-02750 (August 10, 2023 document titled "DISH - Discount Capture Table (8.9).pdf" withheld as related to merger negotiations) *with* P2-02685 (August 10, 2023 document titled "DISH - Discount Capture Table (8.9).pdf" withheld as related to transactions undertaken by DISH and/or EchoStar entities in January 2024).

[5] *E.g.*, *id.* at P2-02544 (Email from D. Dufner at White & Case to DISH titled "Deck" withheld as "Attorney Client; Common Interest/Joint Defense" communication related to *both* merger negotiations and liability management transactions); P2-02546 (same regarding document titled "DISH – Discount Capture (11.7.23)"); P2-02720 (same regarding document titled "DISH - Overview of Potential Strategic Capital Structure Solutions (November 2023).pdf").

1.  **Who was White & Case's client, when did White & Case represent them, for what purpose did White & Case LLP do so—and why can't Defendants get their story straight?**

As this litigation has progressed, Defendants' position on who White & Case represented has flipped based on what made sense for them at the time. In October 2024, Defendants' counsel represented to Plaintiffs' counsel that White & Case represented EchoStar—**and only EchoStar**—before the merger and not the "broader DISH/DBS group."[6] Then, Plaintiffs sought document discovery regarding the January 2024 "liability management" transactions and the merger that preceded it. Defendants categorically refused to provide Plaintiffs documents, taking the position that because White & Case **only** represented non-party EchoStar before the merger, they lacked "possession, custody, or control" of DBS documents. Specifically, Defendants advised that "Pre-merger – White & Case was engaged by EchoStar, **not DBS**, and consequently any materials that W&C has for this pre-merger time period are not in the possession, custody, or control of the party to this litigation, DBS."[7]

Several months later,[8] when that position would have required Defendants to produce documents, Defendants' counsel disavowed their position and claimed that in **May 2023**, "White & Case began to provide advice to **both EchoStar and DISH** regarding potential liability management transactions that might occur post-merger."[9] Defendants' counsel reiterated that position just days ago to the Court, mirroring his clients' position in the joint letter teeing up this dispute.[10] But now, Mr. Ergen creates yet another reality, declaring that White & Case did **not** represent EchoStar regarding the liability management transactions in May 2023.[11] Instead, White & Case represented DISH—**and DISH alone**—in May 2023 and did not represent EchoStar until October 2023.[12] These shifting explanations are inexplicable: surely White & Case can be counted on to know who its clients are and who they are not. But perhaps not.

Mr. Ergen's reference to a November 20, 2023, White & Case engagement letter that purportedly establishes a joint representation between DISH and

---

[6] *See* Dkt. No. 93-3 at 2, reattached here as **Exhibit B**.

[7] Ex. B at 3.

[8] Immediately before taking that new position, Defendants could not articulate who White & Case represented. For example, in April 2024, when Plaintiffs' counsel asked whether White & Case represented DISH before the merger closed, two White & Case attorneys answered simultaneously. One said "yes," while the other said "no." Email from R. Marsters (Milbank) to G. Kurtz (White & Case) et al., copying A. Leblanc (Milbank) et al., titled "RE: US Bank Trust Co. v. DISH DBS Corp. et al., Case No. 24-cv-03646" (April 22, 2025) attached hereto as **Exhibit C** at 10.

[9] Ex. C at 2 (Email from C. Volpe (White & Case) to R. Marsters (Milbank) et al., copying G. Kurtz et al., titled "RE: US Bank Trust Co. v. DISH DBS Corp. et al., Case No. 24-cv-03646" (April 29, 2025)).

[10] Hr'g Tr. August 6, 2025, at 68:6-9; *see also* Dkt. No. 93 at 3, n.6 (Defendants' position) ("[DISH and EchoStar] retained White & Case in May, and will provide a declaration if necessary.").

[11] *See* Dkt. No. 96, Declaration of Charles W. Ergen in Opposition to Plaintiffs' Motion to Compel Joint Representation Privilege Material (the "**Ergen. Decl.**"), ¶¶ 5-6.

[12] *Id.* ¶ 9.

EchoStar only clouds the issue.[13] First, that engagement letter is ***addressed solely to DISH***, not EchoStar. Similarly, the letter is ***signed only by DISH***, not EchoStar. Even Defendants' partial quote of the letter belies their position, which when considered in full states "[w]e write to ***confirm that DISH Network Corporation*** and its subsidiaries ('you' or 'DISH')" ***is engaging White & Case LLP*** ('White & Case' or the 'Firm') to perform legal services on its behalf in connection with certain liability management transactions, including representing DISH's affiliate EchoStar Corporation and its subsidiaries (collectively, the 'Services')."[14] Second, the engagement letter's timing is curious, as it comes ***203 days after*** Defendants claim White & Case's representation of DISH began with respect to the liability management transactions and ***50 days after*** White & Case's joint representation of DISH and EchoStar purportedly began. Defendants have produced no other engagement letter evidencing a joint representation.

**2.  Defendants' latest "Heads I Win, Tails You Lose" position is belied by the record, and should not be credited.**

After filing the Ergen Declaration, Defendants' new position is as follows:

- Defendants describe certain documents as relating to "merger negotiations" and other documents as relating to planning the intertwined "liability management" transactions among the same entities that merged, which occurred 10 days later.

- For numerous documents, notwithstanding privilege log entries that describe the documents as relating to ***both*** issues (consistent with Defendants' previous representation that the liability management transactions were "carried out as part of a broader effort to integrate the newly-merged entities"),[15] Defendants (now) purport to divine exactly which document is being withheld on exactly which basis despite the interlocking transactions and the presence of common DISH and EchoStar recipients. This position is dubious for myriad reasons, including because Mr. Ergen appears to transact all his EchoStar business (and DISH business) from his DISH email account, leaving Plaintiffs' counsel to guess (and Defendants' counsel to decide) which entity Mr. Ergen is representing at any given time.

- Thus, Defendants seem to assert that if the documents relate to White & Case advising EchoStar, they are "merger negotiations."

- If the documents relate to White & Case advising DISH, they are related to transactions that occurred 10 days after the EchoStar-DISH merger closed.

- If White & Case is advising both, then those documents are privileged, too. In fact, Defendants ***withhold 215 documents for which they list both***

---

[13] Dkt. No. 96 at 2.

[14] DISH-USBNK-000027139 (emphasis added). In his declaration, Mr. Ergen attempts to rewrite this letter, declaring the engagement letter was "for White & Case to represent DISH and EchoStar jointly 'to perform legal services on [DISH's] behalf." Ergen Decl. ¶ 8.

[15] *See supra* at n.1.

**explanations (i.e., merger negotiations and liability management negotiations)** as the topics of the material, including ten documents from on or before October 2 and dozens of communications that include White & Case.[16]

In this way, Defendants have created a privilege forcefield around hundreds of documents based on confused and nearly unverifiable privilege assertions. These positions are far too convenient to credit, particularly given Defendants' ever-shifting explanations. And the documents themselves, coupled with White & Case's descriptions of them, strongly suggest Defendants' privilege calls are unreliable. While there are numerous examples, consider three that cannot be reconciled with Defendants' latest position:

- Defendants withhold as an August 24, 2023 email from Dan Dufner, a mergers and acquisitions partner resident in White & Case's New York headquarters, to Mr. Ergen titled "Follow Up in Light of Changes to the Structure," (*i.e.*, the structure of the merger*),* and its attachment: "DISH – Discount Capture Table (8.22)"[17] as containing legal advice from Mr. Dufner ***to DISH*** related to liability management transactions.[18] Yet just a week before, Mr. Dufner advised ***EchoStar*** regarding "structuring considerations," which Defendants have also withheld as EchoStar-privileged regarding "merger negotiations," meaning Mr. Dufner was advising both entities regarding the same "structure" issues.[19] As White & Case announced in August 2023, ***Mr. Dufner led White & Case's representation of "EchoStar Corporation*** on its entry into a definitive agreement to combine with DISH Network."[20] Tellingly, Defendants withhold a prior version of the "DISH – Discount Capture Table" as a privileged communication related to ***both*** "merger negotiations" and liability management issues, confirming the extent of Defendants' unnatural and incoherent position.[21]

- Defendants withhold an email among Mr. Ergen, Mr. Kiser, and George Brokaw, a DISH director, titled "FW: Privileged & Confidential" that attaches a document titled "DISH – Situation Assessment WC Draft 05.26.23.pdf." Defendants identify these documents as relating to "merger negotiations."[22] White & Case, however, only claims to ***represent EchoStar*** regarding "merger negotiations." These documents were drafted by White & Case, were related to the merger, and were

---

[16] There may be even more communications that Defendants cannot evaluate because White & Case is yet to produce a privilege log related to productions from White & Case's files.

[17] This "discount capture table" is ***highly*** relevant as it appears to facially corroborate Plaintiffs' allegations. "Discount capture" refers to an issuer's ability to repurchase or exchange its debt obligations at less than in full. One of the essential allegations in the Complaint is that Defendants engaged in these fraudulent transfers to reduce the prices of the debt securities and then "capture the discount" through the coercive debt exchanges.

[18] *See* Ex. A at P2-02687-88.

[19] *Id.*, at P2-01067-69.

[20] *See White & Case Advises EchoStar Corporation on Its Merger With DISH Network*, White & Case (Aug. 8, 2023), https://www.whitecase.com/news/press-release/white-case-advises-echostar-corporation-its-merger-dish-network, attached hereto as **Exhibit D** (emphasis added).

[21] Ex. A at P2-02524.

[22] *Id.*, at P2-02505-06.

shared with DISH, all as Defendants assert in their privilege log. So, even under Defendants' new explanation, these merger documents drafted by EchoStar's merger counsel must be produced because they were shared with DISH, a privilege-breaking party.

- Defendants withhold an August 10, 2023, email (P2-02684) from Mr. Dufner, EchoStar's M&A lawyer, to Mr. Ergen titled "Next Steps" as being related to transactions undertaken by DISH and/or EchoStar entities in January 2024. On that same day, Mr. Ergen then appears to forward that email (P2-02749) to Mr. Kiser and Thomas Cullen, another DISH employee, which Defendants withhold as being related to "merger negotiations." That exact document also appears on the log at P2-02523 as being withheld for ***both*** reasons. If that were not enough, the same chain on the same day appears a fourth time (P2-02526), this time being withheld as related solely to transactions to be taken in September 2024.

### 3. Defendants accept "common interest" could not arise until October.

Despite withholding almost 100 "merger negotiation" documents from before the amended merger agreement was executed in October that were shared with both EchoStar and DISH, Defendants now appear to recognize that no common interest privilege could attach until October 2, 2023, at the earliest. In so doing, Defendants undercut their earlier position that common interest could attach in August or before. Mr. Ergen declares that following the October 2 merger agreement, "DISH and EchoStar [have] the same interest in creating and maximizing value for stakeholders in their newly combined Companies," because before at least then, no merger could reasonably be certain.[23] After all, the agreement signed in August never materialized, was disavowed by the entities, and a new agreement was entered into by the parties in October.[24] Moreover, Plaintiffs have previously discussed how this type of common ***commercial interest*** is insufficient to establish a common legal interest.

\*      \*      \*

In summary, Defendants' latest letter, and Mr. Ergen's declaration, should be treated with appropriate skepticism. This ***newest*** position as to whom White & Case LLP represented at the relevant times in 2023 is at least their ***third*** in this litigation. Moreover, Defendants' descriptions of the withheld documents (which were provided to Plaintiffs before this latest shift in position) squarely contradict Mr. Ergen's representations. Plaintiffs respectfully submit the Court should compel Defendants to produce the documents they are improperly withholding—several of which appear to be immensely relevant to Plaintiffs' claims—or, at a minimum, order an in-camera review.

---

[23] Ergen. Decl. ¶ 7.

[24] Defendants' latest submission does not alter Plaintiffs' position that the earliest date common interest should attach is December 31, the date the merger closed. EchoStar and DISH's ability to continue to negotiate and recut the agreement before then only highlights the potential for abuse in extending common interest privilege over documents disclosed before then. *See Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 38 (2016).

Plaintiffs would be pleased to answer any questions the Court may have.

*Respectfully submitted,*

*/s/ Andrew M. Leblanc*
Andrew M. Leblanc
**MILBANK LLP**
1101 New York Avenue NW,
Washington, D.C. 20005
Telephone: (202) 835-7574
Facsimile: (202) 263-7574
*Counsel for Plaintiffs*